UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PHILIPS PRODUCTS, INC., a
Delaware Corporation,

        CASE NO. CIV. S-05-1470 WBS GGH

        Plaintiff,

    v.                <u>MEMORANDUM AND ORDER RE:</u>
                      <u>MOTION TO SET ASIDE DEFAULT</u>

CREATIVE WINDOW CONCEPTS,
INC., a California
Corporation, WILLIAM L.
LANGAN, and MARY ELLEN LANGAN,

        Defendants.

----oo0oo----

       Plaintiff Phillips Products, Inc., brought suit in
federal court on diversity grounds to recover money owed by
defendants Creative Window Concepts ("Creative"), William Langan,
and Mary Ellen Langan, on an overdue trade account.  Defendants
failed to appear, plead, or answer plaintiff's complaint within
the time allowed by law and consequently, upon plaintiff's
motion, the clerk entered default as to all defendants on
September 19, 2005.  Defendants now move to set aside the entry
of default.

1

1  I.   Factual and Procedural Background

2          Defendants William and Mary Ellen Langan own and

3  operate a window installation company, Creative Window Concepts,

4  and as part of that business, they bought and installed

5  plaintiff's windows.  (Compl. ¶¶ 8-9; Defs.' Mem. of P. & A. in

6  Supp. of Mot. to Set Aside 2.)  Plaintiff supplied these products

7  pursuant to an open trade account agreement, which required

8  "payment on any invoice or delivery . . . within 30 days from the

9  date of that invoice or delivery."  (Compl. ¶ 10.)  If defendants

10  settled their balance within the first ten days of a payback

11  period, they received a two percent discount on the amount owed.

12  (Id.)

13          Starting in October 2003, Creative began to "experience

14  financial problems" resulting in a failure to pay an outstanding

15  debt to plaintiff in excess of $1,512,555.  (Id. ¶ 11.)  In light

16  of this development, the parties entered into a Credit Extension

17  and Forbearance Agreement ("Credit Agreement"), which established

18  a repayment plan for Creative.  (Id. ¶¶ 12-15.)  Additionally,

19  the Langans pledged, with few exceptions, all personal and real

20  property interests to plaintiff to secure plaintiff's extension

21  of credit.  (Id. ¶ 16.)  When defendants failed to meet the

22  repayment terms detailed in the Credit Agreement, plaintiff filed

23  the instant action to sell and or foreclose on all of the

24  personal and real assets offered to secure the agreement.

25          One of the assets that defendants risked losing as part

26  of this suit was their family home, thus, in an effort to prevent

27  this loss, defendants retained a bankruptcy attorney in August,

28  2005.  (Langan Decl. ¶ 4).  Through counsel, defendants filed for

2

Chapter 7 bankruptcy protection on September 16, 2005.  (Defs.'
Mem. of P. & A. in Supp. of Mot. to Set Aside 2.)   In the
interim, however, defendants missed the deadline for responding
to the instant action, which was September 6, 2005 for defendants
William Langan and Creative and September 8, 2005 for defendant
Mary Ellen Langan.  (Pl.'s Opp'n to Defs.' Mot. to Set Aside 4.)
Defendants claim that this oversight resulted from their mistaken
understanding that the scope of their bankruptcy representation
included representation in this pending civil action.  (Langan
Decl. ¶¶ 5-7.)

        Defendants now move, pursuant to Federal Rule of Civil
Procedure 55(c), to set aside the default entered against them by
the clerk on September 19, 2005.  Plaintiff opposes this motion
and, in the alterative, asks the court to award it the attorneys'
fees associated with the motions for entry of default and also
the fees incurred in defending the instant motion.

II.  Discussion

     A.   Legal Standard

        Federal Rule of Civil Procedure 55(c) allows the court,
"for good cause shown" to "set aside an entry of default."   The
good cause analysis asks: (1) "whether [the defendant] engaged in
culpable conduct that led to the default;" (2) whether
the defendant's defense is meritless; or (3) "whether reopening
the default judgment[1] would prejudice [the plaintiff]."   Franchise

_____

        [1]   Franchise Holding II involved both a Rule 55(c) motion
to set aside entry of default and a Rule 60(b) motion to vacate a
default judgment.  However, the court reasoned that the same
standard governs both motions, 375 F.3d at 925, and consequently,
the language of the good cause test that it applied to the

1  Holding II, LLC. v. Huntington Rests. Group, Inc., 375 F.3d 922,

2  925-26 (9th Cir. 2004).  These factors are disjunctive, therefore

3  the court may deny the motion if any of these questions are

4  answered affirmatively.  Id. at 926.  Additionally, the moving

5  party "[bears] the burden of showing that any of these factors

6  favored setting aside the default."  Id.

7       B.   Culpable Conduct

8       "[A] defendant's conduct is culpable if he has received

9  actual or constructive notice of the filing of the action and

10 intentionally failed to answer."  TCI Group Life Ins. Plan v.

11 Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) (quoting Alan Neuman

12 Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988)).

13 However, as this rule intimates, defendant's conduct must involve

14 more than a mere conscious choice--it must evince a "devious,

15 deliberate, willful, or bad faith failure to respond." Id. at

16 698.  The defendant who fails to respond to a pleading, knowing

17 what the consequences will be, is not culpable if he "offers a

18 credible, good faith explanation negating any intention to take

19 advantage of the opposing party, interfere with judicial

20 decisionmaking, or otherwise manipulate the legal process . . .

21 ."  Id.

22      Here, defendants have explained that they were mistaken

23 as to the scope of the representation provided by their

24 bankruptcy attorneys at Binder & Malter LLP.  (Langan Decl. ¶ 7.)

25 Specifically, they assumed that these attorneys would respond to

26 plaintiff's complaint in a timely manner.  (Id.)  Defendant

27 ───────────────────

28 defendant's Rule 55(c) motion referred to "default judgment"
   rather than "entry of default."

William Langan further asserts that defendants' "delay in responding to the Complaint was in no way intentional."   (Id.)

Defendants' actions, while negligent, were not designed to unfairly manipulate these proceedings.  Cf. McVicker v. Donnelly, 95 F.R.D. 353, 354 (E.D. Pa. 1982) (relieving from default judgment a defendant who mistakenly thought that legal documents to which he failed to respond pertained to another proceeding in which he had actively been participating). Moreover, defendants quickly resolved this misunderstanding with counsel and, merely five weeks after entry of default, filed the instant motion seeking relief.  See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec, 854 F.2d 1538, 1546 (9th Cir. 1988) ("[D]efault judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful." (quoting Thorpe v. Thorpe, 364 F.2d 692, 694 (D.C. Cir. 1966))).

The Ninth Circuit has noted that, in the absence of evidence of "deviousness or willfulness," even weak reasons for delay will excuse a party's failure to respond.  Id. at 698.[2]  It has also advised courts to decide a case, whenever possible, on

---

[2]   Although the court's finding of no culpability in TCI Group Life Insurance Plan v. Knoebber was bolstered by the defendant's exigent personal circumstances, including her mental state and her lack of familiarity with legal matters, the court's analysis is still instructive in this case.  First, defendants here, who risk losing their family home of 29 years are, although perhaps to a lesser degree, facing distressing personal issues. Second, the court in Knoebber noted that underlying its decision was a desire to clarify that, in the context of entry of default, a culpable party is someone who is not merely at fault, but someone who ignored court proceedings in bad faith.  244 F.3d at 693, 697.

1   the merits.  Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984).

2   In light of these principles, the court finds that defendants'

3   conduct was not culpable and should not interfere with their

4   ability to challenge the merits of plaintiff's case.

5          C.   Meritorious Defense

6          Defendants must also demonstrate that they have a

7   meritorious defense to plaintiff's claims.  To do so, defendants

8   must present "specific facts that would constitute a defense."

9   Franchise Holding II, 375 F.3d at 926.  "A 'mere general denial

10  without facts to support it' is not enough to justify vacating a

11  default;" however, defendants need not prove the truth of their

12  factual allegations at this stage.  Id. (quoting Madsen v. Bumb,

13  419 F.2d 4, 6 (9th Cir. 1969); Knoebber, 244 F.3d at 700

14  ("[W]hether the factual allegation was true [is] the subject of .

15  . . later litigation.").

16         Defendants propose several possible defenses to

17  plaintiff's action and allege, inter alia, that plaintiff

18  interfered with their business dealings, making it impossible for

19  them to comply with the terms of the repayment agreement.

20  ((Defs.' Mem. of P. & A. in Supp. of Mot. to Set Aside 5-6.)

21  This defense is factually supported by a sworn affidavit and

22  could potentially serve to defeat liability in this case.

23  Defendants' burden at this point in the litigation does not

24  involve proving their theories--they need only "make some showing

25  of a meritorious defense as a prerequisite to vacating an entry

26  of default."  Haw. Carpenters' Trust Funds v. Stone, 794 F.2d

27  508, 513 (9th Cir. 1986) (emphasis added).  Defendants have thus

28  met their burden at this stage.

1          D.   <u>Prejudice to Plaintiff</u>

2          Finally, defendants are required to show that plaintiff

3  will not suffer prejudice if the court sets aside the entry of

4  judgment.  Significantly, "delay alone does not constitute the

5  sort of prejudice cognizable upon a Rule 55(c) motion . . . ."

6  <u>Apache Nitrogen Prods., Inc. v. Harbor Ins. Co.</u>, 145 F.R.D. 674,

7  682 (D. Ariz. 1993).  Defendants must instead "show[] that delay

8  will result in the loss of evidence, create increased

9  difficulties of discovery, or provide greater opportunity for

10 fraud and collusion."  <u>Id.</u> (quoting <u>Davis v. Musler</u>, 713 F.2d

11 907, 916 (2d Cir. 1983)).

12         Plaintiff does not argue that prejudice would result

13 from a decision to vacate the clerk's entry of judgment.  Nor can

14 the court imagine, based on the facts alleged, how plaintiff

15 might be prejudiced by the court's decision to grant defendants'

16 motion, given that delay alone is insufficient.  Consequently,

17 this third factor, like the two before it, favors defendant's

18 motion for relief from entry of default.

19         Plaintiff does, however, request that if the court sees

20 fit to grant defendants' motion, that it award plaintiff the

21 legal expenses incurred in connection with requesting entry of

22 default, attempting to agree on a judgment amount, and defending

23 the instant motion (totaling $5,810).[3]  (Lerner Decl. ¶ 9.)

24 _____

25         [3]   Plaintiff suggested at oral argument that additional
   fees (those incurred while preparing an unfiled motion for
26 default judgment) should be added to the award here.  However,
   given the timeliness of defendants' motion to set aside, and the
27 fact that both parties were devoting time to work out a
   stipulated judgment when the instant motion was filed, the court
28 does not think further compensation for work on incomplete

                                7

1  Defendants are amendable to paying $200, which it estimates to be

2  the portion attributable to the cost of the default itself.[4]

3  (Defs.' Reply 6.)

4        The Ninth Circuit has held that "it is appropriate to

5  condition setting aside a default upon the payment of a

6  sanction," which can include attorneys' fees. La. Hydrolec, 854

7  F.2d at 1546-47; Wokan v. Alladin Int'l, Inc., 485 F.2d 1232,

8  1234 (3d Cir. 1973) (noting that payment of costs or attorneys'

9  fees commonly accompanies a grant of Rule 60(b) motion to set

10 aside a default judgment); Int'l Broth. of Elec. Workers, Local

11 Union No. 313 v. Skaggs, 130 F.R.D. 526, 530 (D. Del. 1990)

12 (awarding attorneys' fees incurred because "[t]o avoid the

13 harshness of a default, courts favor alternative sanctions which

14 would be equally effective yet less severe."). "[C]onditioning

15 the setting aside of a default [rectifies] any prejudice suffered

16 by the non-defaulting party as a result of the default and the

17 subsequent reopening of the litigation . . . ." La. Hydrolec,

18 854 F.2d at 1546. Thus, absent any authority to the contrary, an

19 award of attorneys' fees, as requested by plaintiff, is warranted

20 here.[5] As one court has noted, "plaintiff should not have to bear

21

22 motions is warranted. Moreover, plaintiff will likely find a use
   for its work on proving up the judgment when preparing its case
23 on the merits.

24     [4] Defendants point out that the amount requested, $5,810,
   was unexplainably $200 higher than the total of the attorneys'
25 fees requested.

26     [5] Defendants, through their attorney, conceded at oral
   argument that they are capable of paying this sanction. Thus,
27 the court's order here does not run afoul of the Ninth Circuit's
   position that "imposition of a condition that is impossible for a
28 party in default to satisfy" is "tantamount to a denial of [the]

1  the costs of defendant[s'] neglect."  Howard Fischer Assocs.,

2  Inc. v. CDA Inv. Techs., No. CIV.A. 94-4855, 1995 WL 472115, at

3  *7 (E.D. Pa. Aug. 10, 1995).

4          Plaintiff's attorneys submitted the following

5  calculated fees: $ 2,610 for 17.4 hours of work performed by an

6  associate attorney and $2,250 for 9 hours of work performed by an

7  Of Counsel with 10 years of experience.  (Lerner Decl. ¶ 9.)

8  Additionally, counsel requested $750 for 3 hours spent preparing

9  for and attending oral argument for the instant motion.  (Id.)

10  Broken down, counsel's request assigns a rate of $250 per hour to

11  the experienced attorney on this matter and $150 per hour to the

12  associate.  (Id. ¶ 10 (declaring that these rates are consistent

13  with prevailing market rates)).  Defendants did not object to the

14  reasonableness of the hours spent or the proposed rates.

15  Additionally, the going rates for experienced attorneys and

16  associates in the Sacramento area for other types of litigation

17  are consistent with the amounts requested.  See Sanford v.

18  Thrifty Payless, Inc., No. CIV S-02-0480, 2005 WL 2562712, at *4

19  (Oct. 11, 2005) (approving of a market rate of $250 per hour for

20  experienced attorneys and $150 per hour for associate attorneys

21  in ADA litigation).  Therefore, the court finds attorneys' fees

22  in the documented amount of $5,610 to be reasonable.[6]

23          IT IS THEREFORE ORDERED that defendants' motion for

24  relief from the entry of default be, and the same hereby is,

25

26  motion to set aside entry of default."  Stone, 794 F.2d at 513.

27      [6]   Plaintiff actually requests $5,810, but fails to
   explain the source of the $200 not attributable to the documented
28  attorneys' fees.

9

1  GRANTED.

2        IT IS FURTHER ORDERED that defendants pay plaintiff's

3  costs incurred in pursuing and defending the entry of default

4  ($5,610).

5  DATED:  January 11, 2006

6

7  _____

8  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28